VICTOR BROWN and SADIE BROWN, Appellants, v. HARRY M. GAMBREL, FRED W. KLABER and WILLIAM RANDALL, Members of and Constituting JACKSON COUNTY BOARD OF ZONING ADJUSTMENT, Respondents, WOMEN'S CHRISTIAN ASSOCIATION OF KANSAS CITY, MISSOURI, MERL REED, E. A. WHITAKER, F. R. RYALS. W. S. POLLARD, and GARNETTE YOUNG, KANSAS CITY, MISSOURI, a Municipal Corporation, and JOHN M. PICTON, Secretary of the CITY PLAN COMMISSION, Intervenors.—No. 40621.—213 S. W. (2d) 931.

Division One, September 13, 1948.

Rehearing Denied, October 11, 1948.

*William G. Boatright* for appellants.

194

*David M. Proctor, Benj. M. Powers, Cyrus Crane* and *James F. Walsh* for respondents.

[932] VAN OSDOL, C.—Appeal from a judgment of the Circuit Court in a certiorari proceeding affirming the determination of the Jackson County Board of Zoning Adjustment denying the issuance of a permit and certificate authorizing appellants to use their property for purposes other than "one family dwellings." Appellants, in effect, assert the denial of a permit for other and non-conforming uses, if upheld, will cause loss to them in excess of $7500.

Appeals in proceedings involving appellants' property and its use have heretofore been perfected and decided by this court. Women's Christian Ass'n. of Kansas City v. Brown, 354 Mo. 700, 190 S. W. 2d 900; and Brown v. Montgomery, 354 Mo. 1041, 193 S. W. 2d 23. The records and the evidence introduced in the proceedings reviewed in the two former cases were offered and considered in evidence in the instant circuit court certiorari proceeding. The facts stated in the two former opinions of this court are essential to an understanding of the instant case, and reference is made to those opinions for the more complete statements of facts.

After the decision, Brown v. Montgomery, supra, wherein the trial court's judgment was affirmed, the Board of Zoning Adjustment of Jackson County, in compliance with this court's decision, determined the issue of "expansion of the non-conforming use." The Board ordered that no permit authorizing appellants' use of their property as a public dance hall should issue, the order reciting "the former operation of the petitioners (appellants herein) was that of a

public stable, this finding being in accordance with the opinion of the Trial Court (in the certiorári proceeding reviewed by this court in Brown v. Montgomery, supra)'' and the Board further found ''the change by the petitioners in the use of their property from that of a public stable to a dance hall . . . constitutes an expansion of use within the meaning of Section 16 of the Zoning Order of Jackson County.'' Thereafter upon application of appellants the Circuit Court granted the writ of certiorari to review the Board's findings and order.

Before the Circuit Court heard the cause, however, the City of Kansas City extended its corporate limits, effective *January 1*, [933] *1947*, to include an area containing appellants' property, and by ordinance the area was zoned, as it had been theretofore by the County Zoning Order, for ''one family dwellings.'' In this manner the zoning of the property became governed by the Zoning Ordinance of Kansas City, Missouri, Section 5 of which Ordinance (No. 45608) provides, a ''non-conforming use existing lawfully at the time of the passage of this ordinance may be continued (except as hereinafter provided).''

It is provided by Subsection (b) of Paragraph 7, Section 10, of the Zoning Ordinance of Kansas City that no license to conduct any business may issue unless and until the applicant secures a certificate from the Secretary of the City Plan Commission that the business is not prohibited at the stated location by the provisions of the Zoning Ordinance of Kansas City. Accordingly appellants applied to the Secretary of the City Plan Commission for a certificate to use their property as an ''indoor amusement park and stadium,'' a use of the same class as ''public stable'' as classified in the City Zoning Ordinance, and so in a way comparable to a ''public dance hall'' as classified in the County Zoning Order.

The application was rejected, by letter transmitted by the Secretary, on the grounds that appellants' non-conforming use of their property as a public stable was abandoned before January 1, 1947; and that the building was remodeled and arranged for the non-conforming use as a public dance hall; but that the non-conforming use as a public dance hall did not lawfully exist on January 1, 1947. Thereafter, the Secretary (and the City of Kansas City) by leave of court and by agreement intervened and undertook to be bound by the judgment in the instant certiorari proceeding. The intervenors, City of Kansas City and the Secretary of the City Plan Commission, requested the court's determinations whether before January 1, 1947, appellants were restricted to the use of their property for ''one family dwelling''; whether appellants had abandoned the use of their property as a public stable; whether appellants had the right before January 1, 1947, to use their property as a public dance hall; whether, if appellants before January 1, 1947, had abandoned the non-conforming use as a public stable and had not acquired a lawfully

existing right to use their building as a public dance hall, they had any lawfully existing right to use the building for any other non-conforming use; and whether appellants before January 1, 1947, had any other lawfully existing right to use an unenclosed portion of their property for a public parking lot. And Women's Christian Association (plaintiff-respondent in the case of Women's Christian Ass'n. of Kansas City v. Brown, supra) and others were permitted to intervene. The last mentioned intervenors prayed for declarations that appellants had no non-conforming use lawfully existing, within the intent and meaning of the Zoning Ordinance of Kansas City, on January 1, 1947; that appellants are not entitled to a certificate from the City Plan Commission to use their property as a dance and dinner establishment; and that appellants upon proper application are entitled to use their property only in the conforming use for "one family dwellings."

Upon hearing and review by the Circuit Court, the determination of the County Board of Zoning Adjustment was "in all respects affirmed," and the court further found,

"3. That from the effective date of the zoning order of Jackson County until the summer of 1944, plaintiffs (appellants) had the right to use their premises and buildings for a non-conforming use a public stable, but that plaintiffs abandoned or discontinued said non-conforming use in the summer of 1944 and could not thereafter re-establish said non-conforming use within the meaning and intent of Section 16 of the Zoning Order of Jackson County.

"4. That plaintiffs did not have since the summer of 1944 nor do they now have a lawfully existing non-conforming use on their said premises within the meaning of the Zoning Order of Jackson County or within the meaning of the Zoning Ordinance of Kansas City, nor did plaintiffs have lawfully existing at the time (January 1, 1947) the Zoning Ordinance of Kansas [934] City became effective as to plaintiffs' premises, any lawful existing non-conforming use, and in particular plaintiffs did not have a non-conforming use for a dance and dinner establishment lawfully existing at any of the times mentioned herein.

"5. That plaintiffs abandoned their non-conforming use of said building a public stable in the summer of 1944 and had not acquired a lawfully existing right to use said building for a dinner and dance establishment, nor have they acquired the right to use said premises for any other non-conforming use within the meaning of the Zoning Order of Jackson County and the Zoning Ordinance of Kansas City.

"6. That plaintiffs' said property became a part of the corporate area of the city of Kansas City on January 1, 1947, and as such became subject to the Zoning Ordinance of Kansas City, being Chapter 55, Revised Ordinances of Kansas City 1941, under the

provisions of which said premises on said date became zoned for U-la (single family dwellings) and not otherwise.

"7. That plaintiffs are not entitled to secure a certificate from the City Planning Commission of Kansas City to use their premises for the purposes set forth in their application.

"8. That plaintiffs, upon proper application to the City Planning Commission of Kansas City, are entitled to a certificate to use their said premises and building only for the purposes and conforming uses as set forth in U-la (one family dwellings) uses as provided in the Zoning Ordinance of Kansas City.

"9. That on January 1, 1947, plaintiffs did not have a lawful existing right to use the (un)enclosed portion of their property constituting a paved area for a public parking lot."

Appellants contend, (1) that if the zoning laws, properly construed and applied, require the conclusion that appellants cannot lawfully use their property for any of the purposes proposed by them, then the same are as to their property unconstitutional; (2) that the proper interpretation and application of the zoning law does not require or permit the conclusions reached by the trial court.

Appellants have no quarrel with the general purpose of zoning, nor have they any quarrel with reasonable restrictions on nonconforming uses. But, they announce they do have "a most serious quarrel with any zoning law that deprives the owner of a pre-existing non-conforming building of all present beneficial use. Any interpretation, construction or application of the otherwise applicable zoning laws, county or city or both, which produces such a result as the present judgment, destroys property and vested property rights."

The evidence does show appellants' building is not adapted for residential purposes. It seems the land, itself, is appropriate for and contained in a district appropriately zoned for residential-building use. The building, however, as originally constructed was adapted for the beneficial but non-conforming use as a public stable, or riding academy. See description of appellants' building, Women's Christian Ass'n. of Kansas City v. Brown, supra, 354 Mo. at pages 703-704, 190 S. W. 2d at page 902.

Having examined the entire record, we believe that, although appellants are now deprived of the non-conforming use of their nonconforming building by virtue of the Zoning Order of Jackson County and the Zoning Ordinance of Kansas City, appellants are lawfully and not unconstitutionally deprived of such use. It seems clear to us the zoning laws have been properly interpreted and applied to the correctly determined facts—appellants' abandonment of their lawfully pre-existing non-conforming use of their building and facilities as a public stable; their unauthorized change of use to that of a public dance hall and their unauthorized alteration and improvement of their building and facilities in effecting the change of use whereby

the non-conforming use thereof was expanded and the non-conforming use-life of the building and facilities prolonged.

Appellants do not really question the reasonableness of the zoning of the area (in which their property is situate) for residential, single dwelling, purposes; but **[935]** appellants say that, when the County Zoning Order came into effect (April 26, 1943), appellants had a non-conforming building operated in a non-conforming use. This is true. And appellants were then lawfully using their building as a public stable. Brown v. Montgomery, supra. Such use of such building was a priorly vested right of which the county by the institution (April 26, 1943) of its zoning plan could not deprive appellants. Zoning Law and Practice, Smith, Sec. 85, p. 108; Women's Christian Ass'n. of Kansas City v. Brown, supra; In re Botz, 236 Mo. App. 566, 159 S. W. 2d 367; Section 8 of the Enabling Act of 1941, Laws of Missouri, 1941, page 485, Mo. R. S. A. Sec. 15364.8. It has been said a building represents an investment in the improvement of the land upon which it is erected; and if regard were not had for the reasonable protection of such investment, then a zoning law, order, resolution or ordinance would frequently be confiscatory with respect to its application to particular structures. Not only is a building erected with a view to its adaptation to a specific form of use which is to be made of it, but it is often difficult, if not impossible, to convert it to an entirely different form of use. In re Botz, supra. But the Zoning Order of Jackson County, in harmony with constitutional provisions insuring protection of vested rights, and in compliance with the Enabling Act of 1941, protected appellants in their non-conforming use (public stable) of their non-conforming building (constructed for use as and adapted for a public stable, or riding academy) by Section 16 of the Zoning Order of Jackson County, which provides that a non-conforming use, building or structure existing lawfully at the time of the adoption of the Order "may be maintained"; and the further privilege was granted as follows, "or changed to a conforming use or a non-conforming use of the same or a higher classification . . ." We here parenthetically note the limiting provisions "but such non-conforming use building or structure shall not thereafter be: . . . 2. Expanded. 3. Re-established if discontinued . . ." Section 16, Zoning Order of Jackson County.

It is apparent from the record that appellants did not find the lawfully existing non-conforming use (public stable) profitable to them. Perhaps this was because of patrons' loss of interest in equitation during the anxious years of World War II, and because of the practical difficulties of complying with sanitary requirements imposed by the State upon such a non-conforming use in a residential area. And in the summer of 1944 appellants *ceased the operation of their property as a public stable and changed the use* of their building to the non-conforming use of a "public dance hall," the latter non-

conforming use being of the same classification as that of public stable. Section 11 (District "F"), Zoning Order of Jackson County. In effecting the change appellants expended $35,000 (in alterations and improvements more particularly noticed infra) to the end of converting and adapting their property for such different but non-conforming use, public dance hall. It would not be assuming too much, we believe, for us to now say that before the change was effected the economic advantage of the non-conforming use (public stable) had all but "faded out" and the "economic" use of the land was all but blended with the conforming (residential) use of the district or zone in which the property is situate. See now excerpt from The Law of Zoning, Metzenbaum, p. 288, quoted in the opinion, Women's Christian Ass'n. of Kansas City v. Brown, supra, 354 Mo. at pages 709-710, 190 S. W. 2d at page 906. We must also observe the cessation of use as a public stable was not caused or brought about by any provision of the Zoning Order of Jackson County.

Now appellants did not have a right to effect a change that would expand the non-conforming use of their property, nor had they the right to alter and improve their non-conforming building so as to prolong the term of a non-conforming use, nor had they the right to re-establish the non-conforming use thereof, if discontinued, in view of the county's zoning plan, the ultimate purpose of which is to confine within established zones or districts all uses of similar classification, and the underlying spirit of which plan is to diminish and not [936] to extend non-conforming uses. Women's Christian Ass'n. of Kansas City v. Brown, supra; In re Botz, supra; The Law of Zoning, Metzenbaum, pages 287-288; Section 11, Enabling Act of 1941, Laws of Missouri, 1941, p. 487, Mo. R. S. A. sec. 15364.11; Sections 16 and 21, Zoning Order of Jackson County. And the privilege of changing a non-conforming use to another non-conforming use, although of the same classification, was not to be exercised as the appellants might decide for themselves. The County Zoning Engineer and Board of Zoning Adjustment are given the authority, in the first instance, to administratively determine whether a change from one non-conforming use of land, and the alteration of the building or other structure to another use is within the purview of the Enabling Act of 1941 and of the Zoning Order of Jackson County, even though such other non-conforming use is within the same classification as the original non-conforming use. Section 11, Enabling Act of 1941, supra; Section 21, Zoning Order of Jackson County; Women's Christian Ass'n. of Kansas City v. Brown, supra; Brown v. Montgomery, supra. The change of use and alterations and improvements of the building could only be lawful when properly authorized by a *permit*. This has been held to be a reasonable and constitutional requirement, and *was* required by Section 21 of the Zoning Order of Jackson County. Women's Christian Ass'n. of Kansas City v. Brown, supra. Appel-

lants did not apply for and procure the permit but, nevertheless, changed the use and altered and improved their property to the extent of an expenditure of $35,000, and thereafter, until enjoined, used their property in the non-conforming use, public dance hall. Such change of use and alteration of the building without a permit were unlawful, and such unauthorized change ·of use and appellants' investment or expenditure of funds in converting the improvements in connection with the change of use gave appellants no additional vested right. Zoning Law and ·Practice, Smith, secs. 89 and 90, pp. 122 and 127.

As stated, the County Board of Zoning Adjustment determined appellants' change of use, after the effective date of the Zoning Order, from that of a public stable to that of dance hall constituted an expansion of use within the meaning of the Order, which determination was affirmed "in all respects" by the trial court; and, as we have also noted, the trial court found appellants had "abandoned" the non-conforming use of their property as a public stable and had no lawfully existing non-conforming use January 1, 1947, thus, in effect, affirming the action of the Secretary of the City Plan Commission.

Having examined the whole record, we are of the opinion it should not be said the determinations were arbitrary. It is not our purpose to substitute our judgment for that of the zoning authorities in their administration of zoning, county and city.

It is true there was evidence tending to show the concrete of the new flooring was poured "on dirt" and without any other foundation and that the new concrete floor and the other modifications and improvements of the building and adjacent area would not prolong the life of the building; nevertheless, it could be reasonably found the shown alterations and improvements would tend to make the building more permanent and prolong the life of the non-conforming building for a non-conforming use. It might be argued there were no additionally erected exterior structures. It would be reasonable to say that the building and grounds were nonetheless substantially altered and were made substantially different, and that the facilities for a non-conforming use were greatly increased and the life of the building for non-conforming use prolonged. It could not be argued the building and other facilities were not, as originally planned and constructed, adapted for use as a public stable with the consequent volume of patronage shown in evidence, and that by the alterations and improvements the building and other facilities were changed so as to be adaptable for use and were used as a public dance hall with adequate facilities for the greatly increased volume of patronage shown in evidence. Such substantial alteration and transformation of adaptation [937] of appellants' facilities were accomplished by the laying of the interior concrete

flooring, by the removal of the horse stalls and the laying of concrete slab to accommodate the tables and chairs for patrons, by the ceiling or insulation of the formerly bare boarded walls, by the installation of different or additional lighting fixtures and modern sanitary plumbing and by changing the riding ring's adaptability to that of a place for parking cars. As said by this court in the case of Women's Christian Ass'n. of Kansas City v. Brown, supra, there certainly ''was some reasonable basis for finding an expansion of use when improvements were made, which cost $10,000 more than the purchase price of the original building with 13 acres of land, changing the business from one of mainly daytime activity to one carried on during the nighttime, increasing facilities so that ten times the number of people could be accommodated by this new business (more than 1000 attended on one occasion), and also increasing the area used as a parking lot by the use of the outside riding ring and land adjoining for that purpose and constructing a new entrance to it. Increase of volume of business alone is not an expansion of a use, as defendants suggest, but more than that is involved herein.''

Since it was determined the change of use and the alterations and improvements of the building and adjacent facilities were an ''expansion'' of the non-conforming use and a prolongation of the term of the non-conforming use of the building, we do not hesitate in affirming the decision that appellants had no lawfully existing nonconforming use or lawful right to use its property for a nonconforming purpose January 1, 1947. The evidence introduced relevant to the issue of expansion, in connection with the now lawfully determined fact, expansion, was sufficient and convincingly supportive of the finding that appellants had discontinued, that is, ''abandoned'' the non-conforming use, public stable.

It is said that abandonment is a composite fact, one element visible, the other sounding in intention, motive. It is a fact made up of an *intention* to abandon *and the external act* by which the intention to abandon is carried into effect. The *two* elements must conjoin and operate together or there can be no abandonment. See Pocoke v. Peterson, 256 Mo. 501, 165 S. W. 1017 (an issue of abandonment of homestead), cited by appellants; and Beyer v. Mayor and City Council of Baltimore City, 182 Md. 444, 34 Atl. 2d 765 (an issue of abandonment of non-conforming use), cited by respondents. Not only did appellants cease the operation of their property as a public stable with riding ring but, as stated, they changed their operation to that of a public dance hall, altering and transforming their building and adjacent lands from a structure and grounds appropriate for a public stable with riding ring to a structure and grounds adapted to use as a public dance hall with automobile parking area. While it might be urged the evidence shows appellants did not intend to abandon all non-conforming use of their property

inasmuch as they changed its use to the non-conforming use of public dance hall, it could not be soundly urged, we believe, that appellants did not manifest an intention and by their acts effectuate their intention to abandon and so did abandon their property's only theretofore lawfully existing use, public stable. But in discontinuing their use as a public stable they "expanded" the non-conforming use and prolonged the non-conforming use-life of their building in violation of the imposed limitations on non-conforming uses and did violence to the purpose and intent of the zoning laws, depriving themselves of a legally authorized use of their property as a public dance hall. Thus by their own acts was the continuance or continuity of lawful non-conforming use of their property broken. There was no non-conforming use of appellants' property lawfully existing January 1, 1947. The determined facts of unauthorized change of use and of "expansion" of use, in our view, differentiate the instant case from the facts of the case of Douglas v. Village of Melrose Park, 389 Ill. 98, 58 N. E. 2d 864, cited and greatly relied on by appellants, wherein, upon the [938] issue of abandonment, it was held there was a mere suspension of a non-conforming use.

The judgment should be affirmed.

It is so ordered. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.