**NORTHWEST MISSOURI STATE FAIR, INC., a corporation, Respondent,**

v.

**Leo LINVILLE, Appellant.**

**No. 25088.**

Kansas City Court of Appeals.
Missouri.

Dec. 1, 1969.

Robert L. Ross, Albany, for appellant.

R. E. Moulthrop, Bethany, for respondent.

SHANGLER, Judge.

Plaintiff Northwest Missouri State Fair, Inc., lessor of certain premises in Bethany, Missouri, brought suit for a declaratory judgment against Leo Linville, Charles Hoops and William McIntosh, its lessees. Plaintiff sought a judicial determination of the terms of that lease, a declaration of the rights and obligations of the parties under it and an adjudication that the defendants had no further right to operate upon the premises under its terms.

Defendants Linville and McIntosh filed their answers to the petition; defendant Hoops defaulted. The issues were tried to the court. The court made two factual findings: (1) That the lease was valid; (2) That the lease was negotiated and executed by the individual defendants, Lin-

ville, McIntosh and Hoops either as agents or trustees for Bethany Livestock Auction, Inc. (not a party to the suit) or, alternatively, that the lease was assigned "as a matter of fact to said corporation by act and deed of the individual defendants" to which transfer of interest the plaintiff acquiesced. Thereupon, the court adjudged that the lease was valid and that defendants Linville, Hoops and McIntosh had no right, claim or interest in it. Defendant Linville, only, appeals from that judgment.

Appellant Linville ties the efficacy of this appeal to a lapse in plaintiff's pleading. He does not actually attack the judgment, as such. Rather, although acquiescing in the court's finding (and that part of its judgment) sustaining the validity of the lease, he contends that the alternative findings of fact were erroneous because: (1) The findings that defendants either executed the lease as agents or trustees for Bethany Livestock Auction, Inc. or assigned it to Bethany after its execution were on issues not raised by the pleadings or responsive to them; (2) They were inconsistent with plaintiff's pleaded theory of a breach of a subsisting lease by defendants as lessees in their own right; and, (3) As Section 432.060, V.A.M.S., requires an assignment of a lease to be in writing, the court's finding of an assignment by "act and deed" was not sufficient to satisfy the statute. We affirm the judgment. Our statement of reasons follows.

The facts essential to the determination of this controversy are not in dispute. This, notwithstanding a plethora of evidence presented to prove, and refute, an alleged breach of the lease terms by defendant Linville's failure to properly maintain the premises. Plaintiff contended it was thereby effectively prevented from conducting feeder calf sales on the premises, a use reserved to itself under the lease. The court made no finding on that issue. It was not essential to the judgment, and we make no further reference to it.

Some time prior to its effective date of June 1, 1960, the parties entered into the lease in question. It was for a term of ten years with multiple options to renew. The lease itself, including its assignment provisions, contemplated the expenditure of a substantial sum of money to adapt the building for livestock auction purposes. In April, 1960, the three defendants, as original incorporators of the Bethany Livestock Auction, Inc., subscribed to its articles of incorporation. They deposited $25,000.00 or more in a bank fund which served to pay for the improvements to the premises as contemplated by the lease terms. In May, 1960, the certificate of incorporation issued and the stock certificates in Bethany Livestock were distributed among the several defendants according to their respective financial interests. From May 20, 1960, forward, it was admitted that Bethany assumed the operation of the barn sales. Defendant Linville eventually became its president and manager. In May, 1960, as well, after the execution of the lease but before its effective date, livestock sales were initiated on the premises. These sales were conducted by Bethany Livestock, the only licensed market on the premises during the entire period of our concern. It was admitted, as well, that from the initial occupancy until suit was filed in December, 1966, all rents accruing under the lease were paid by Bethany Livestock exclusively and none individually by appellant or any other person. For each such remittance, plaintiff issued its receipt to Bethany Livestock, the source of each payment. Eventually, each of the individual defendants, Linville, Hoops and McIntosh, alienated his interest in Bethany Livestock by sale of stock and transfer of certificate to either Don England, Earl Sturgeon, or both. Linville consummated the sale of his shares of stock on November 4, 1964. He contracted, concurrently, with his transferees for the use of the premises for horse sales and promised to pay them $50.00 for each such sale. The obligation to perform under that agreement

continued up to the date of the filing of this action.

A ready understanding of those points of alleged error raised by appellant, and previously listed, requires some reference to the pleadings. Paragraph IV alleged, inter alia, that "plaintiff entered into an agreement denominated a lease, with all of the defendants", a copy of which lease was attached to the petition and incorporated into it by reference. Paragraph VI, the provisions of which appellant pointedly brings to our notice, alleged the default in payment of rent by all the defendants, that defendants Hoops and McIntosh had vacated the premises and that they had been permitted to fall into a state of disrepair and deterioration. It also alleged that defendant Linville had for some time operated a horse sale of "many ill and decrepit animals" and that the premises had been allowed to deteriorate. Finally, Paragraph VII alleged the lease agreement to have been "wholly abrogated and * * * void, a nullity and of no force or effect and this plaintiff is entitled to the premises referred to therein free of any claims of any of the defendants".

Appellant's ensuing argument, attacking the court's alternative finding, involves the following logical progression: Plaintiff's petition alleges defendant Linville to have been its lessee under the pleaded lease. Such an admitted fact must be taken as true against the pleader as it amounts to a judicial admission of that fact. The court's alternative finding that defendant Linville had executed the lease as an agent or trustee for Bethany Livestock necessarily implies that Linville was never a lessee in his own right. Such a finding is inconsistent with plaintiff's pleaded allegation that Linville was a lessee. As the fact that Linville was the lessee was admitted by plaintiff by so having pleaded it, plaintiff is estopped to adopt a position inconsistent with that judicial admission. Therefore, appellant concludes, that alternative finding is erroneous as not respon-

sive to the pleadings and the judgment for plaintiff must be overturned.

A parallel argument is made with respect to the court's alternative finding that appellant and the other defendants assigned the lease as a matter of fact to Bethany Livestock by "act and deed". We do not expound that argument further as our response applies with equal validity to each of appellant's points.

Appellant's argument is based upon a misconception which pervades his brief, as well. Assuming without deciding, that the alternative finding that Linville was an agent or trustee for Bethany Livestock is inconsistent with the pleaded fact of the execution of the lease by him individually, yet such an inconsistency does not and cannot impair a judgment correctly reached in favor of the right party. Our de novo review prompts the conclusion that the court's judgment was correct. Its validity was not impaired even though any and all of the findings may have been erroneous. The reasons a court may ascribe in support of its judgment do not govern its correctness; the result does. Southwest Engineering Co. v. Reorganized School Dist. R-9, Mo.App., 434 S.W.2d 743, 750. This principle applies, as well, to a declaratory judgment action. Edgar v. Fitzpatrick, Mo.Sup., 377 S.W. 2d 314.

In any event, the rule relied upon by appellant that a fact admitted in the pleadings must be taken as true against the pleader as a judicial admission of that fact (State ex rel. Boatmen's National Bank of St. Louis v. Webster Groves Genl. Dist. No. 1 of St. Louis County, 327 Mo. 594, 37 S.W.2d 905, 908; M.F.A. Mutual Insurance Co. v. Hill, Mo., 320 S.W.2d 559) does not apply for yet another reason. We have concluded that the trial court, in effect, allowed plaintiff to amend its petition at the outset of the trial. Appellant does not take into account that the petition upon which the evidence was received and upon which the court ul-

timately rendered its judgment was different from the unamended petition which he assails.

The record discloses that during the interrogation of John Taggart, plaintiff's first witness, plaintiff undertook to elicit from him facts concerning "the organization of the Bethany Livestock Auction Company or any of their fiscal affairs". After objection by defendants and an extended colloquy between court and counsel, it became manifest that the objective of this questioning was to prove either an assignment of the lease by the defendants to Bethany Livestock, or an abandonment by defendants of the lease agreement, or that they had executed the lease as trustees or agents of Bethany Livestock. Counsel for defendants moved for a continuance "to give them an adequate opportunity to meet the new matters raised by plaintiff * * * because I think it amounts to an amendment of the petition". The court, after a painstaking assessment of counsel's arguments and an appraisal of the pleadings, granted defendants' request over plaintiff's objection. After some consultation between defendants and their counsel, their motion for continuance was withdrawn and their objection to "evidence concerning assignment and mutual rescission of the lease" was once again pressed as "beyond the pleadings in this case". The court overruled the objection and the evidence was received. All of the evidence which we have related earlier as to Bethany Livestock's role as occupant of the premises and source of the rent payments, the transfer of ownership in that company by the defendants to others, and other kindred matters came into evidence despite defendants' continuing objections. Appellant appears to maintain that none of this evidence may legitimately be considered in support of the judgment.

The court's findings, concerning which appellant now complains as having been "on issues not raised by the pleadings or responsive to them", were based on this evidence. This evidence, in turn, was received under pleadings which we deem to have been amended to accommodate it.

■ Although the court did not formally authorize plaintiff to amend its petition, that was undoubtedly the intended result. Under the circumstances, the continuance grant to appellant presupposes plaintiff had been allowed to amend its petition to allege those matters expected to be elicited from witness Taggart, which matters had been discussed between the court and counsel. Having thus permitted the amendment, appellant was allowed the continuance to meet the new issues raised by it. This action of the trial court was consistent with the intendment of Sec. 509.490, V.A.M.S. and Civil Rule 55.53, V.A.M.R., permitting liberal amendments to pleadings as justice may require. Montgomery v. Travelers Protective Ass'n of America, Mo.App., 434 S.W.2d 17, 21[10].

■ The record leaves little doubt that defendants were not only aware of the nature of this evidence, but were prepared to meet it. When appellant spurned the continuance he had sought, whatever complaint he may have had concerning the reception of such evidence was waived by that affirmative gesture. We construe that act as an assent to the reception of the evidence. 89 C.J.S. Trial § 661, p. 504.

■ Our remaining concern (and the essential point we surmise appellant intended to raise by this appeal) is to determine whether the *judgment*, rather than the findings, was responsive to the issues raised by the pleadings as deemed to have been amended and whether the relief awarded by the judgment was limited to that sought in the pleadings. A judgment not so limited " ' * * * [would be] coram non judice and void, at least insofar as (it) goes beyond the issues presented and raised by the pleadings' ". Brown v. Wilson, 348 Mo. 658, 155 S.W.2d 176, 180[16]. The petition, as amended, raised the issue of the abandonment of the leased

premises by appellant Linville as one alternative theory of recovery. It asked the court to construe the lease, declare the rights and obligations of the parties in respect of it and to adjudge that defendants had no further right to possession under the lease. The court's judgment was (1) the lease was valid, and (2) none of the defendants had any right, claim or interest in it. The judgment was responsive to the issue raised and was limited to the relief sought in the pleadings.

Once again, we look to what the trial court ruled by its decree, not the reasons it gave to support it. Brown v. Montgomery, 354 Mo. 1041, 193 S.W.2d 23, 27 [3]. We also look to determine whether it was supported by the evidence. The first part of the judgment which declared the lease to be valid was based upon the uncontradicted testimony of the parties. It was also a fact alleged in the petition and admitted by defendants in their answer. Contrary to appellant's misgivings, that declaration meant, simply, that at the time the lease was executed by the parties (in whatever capacity defendants may have done so) it bound them to discharge the obligations raised by its terms as well as receive the prescribed benefits during the contractual period.

■■■ The evidence also strongly supports that part of the judgment that the defendants, including appellant, by trial date no longer had any right, claim or interest in it. Appellant Linville by that time had abandoned the leasehold. Abandonment is largely a matter of intention and because of it, is rarely susceptible of direct proof. The proof of it, therefore, is necessarily largely circumstantial. Such proof must "reasonably beget the exclusive inference of the intentional relinquishment

of the property right involved". 1 Am. Jur., Abandonment, p. 8. When established, such an abandonment, without intention of returning or asserting any rights under the lease, results in a reversion of the right to possession to the landlord.[1] 32 Am.Jur., Landlord and Tenant, p. 729. The evidence in this respect seems overwhelming. Appellant Linville never took possession of the premises as an individual lessee. Instead, Bethany Livestock became the de facto tenant and exclusively exercised all the prerogatives of tenancy under the lease. More than $25,000.00 was spent to remodel the premises as required by the lease terms. It was all derived from a fund belonging to Bethany Livestock. No rent was ever paid by defendants individually; all of it was paid by Bethany Livestock. The lease contemplated that the premises would be used as a livestock sale barn. Bethany Livestock, alone, was licensed by the state for that purpose, and Bethany Livestock alone lawfully conducted such sales there.

■■■ Appellant, admittedly, became its manager and only under those auspices could he be said to have used the premises even to the extent of conducting a horse auction every other week from 1961 on. Then, on November 4, 1964, when he sold his shares of stock in Bethany Livestock to England and Sturgeon, he contracted with them for the use of some of the space on the premises and was accorded the right to hold horse sales at specified times, twice per month. Linville agreed to pay $50.00 for each specified use. There is no evidence that the defendants, individually or in concert, ever intended to occupy the premises or exercise any rights under the lease. All the evidence is to the contrary. This constituted conduct clearly

1. We have concluded that all the defendants, including appellant Linville, abandoned the leasehold and that they relinquished the physical premises in doing so. Thereupon, the right to possession technically reverted to the plaintiff landlord, although there appears never to have been any lapse in Bethany Livestock's actual possession. Bethany Livestock was not made a party to the action, so its right to possession or the nature of such possession were never adjudicated. We make no attempt to determine those questions.

inconsistent with an intention to use the property for which it had been individually acquired. These acts amounted to a repudiation of ownership. They effected an abandonment implied from the circumstances. Jackson v. Merz, Mo.App., 223 S.W.2d 136, 139[10]; Opperman v. LaBrot, Mo.App., 283 S.W.2d 902, 904[3].

Having thus concluded, we need not determine whether the court's judgment could have been supported, as well, upon the theory that defendants had assigned the lease to Bethany Livestock and thereby relinquished all claim to and rights under the lease. Whether such an assignment violated Sec. 432.060, V.A.M.S., as contended by appellant, therefore is irrelevant.

The judgment is affirmed.

All concur.